MATTER OF KU

In Deportation Proceedings

A-15857820

*Decided by Board July 22, 1976*

(1) Notwithstanding the fact that a final order of deportation had been entered against the respondent, the subsequent order of the immigration judge which reopened the proceedings for the purpose of determining whether respondent was entitled to a new grant of voluntary departure, was an interlocutory order because the factual issues underlying the subsequent order involved an entirely new question. Therefore, the Board was without jurisdiction to entertain an appeal of the subsequent order, and the Service's motion seeking reconsideration was denied.

(2) *Matter of Rangel-Cantu,* 12 I. & N. Dec. 74, overruled in part, to the extent it is inconsistent with the Board's position respecting its jurisdiction over interlocutory appeals announced in this decision.

CHARGE:

Order: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251(a)(2)]—Nonimmigrant crewman—remained longer

ON BEHALF OF RESPONDENT:
James J. Orlow, Esquire
Wasserman, Orlow, Ginsberg & Rubin
636 Public Ledger Building
Philadelphia, Pennsylvania 19106

ON BEHALF OF SERVICE:
Sam Bernsen
General Counsel
George Indelicato
Appellate Trial Attorney

In a decision dated February 24, 1976, the immigration judge reopened these deportation proceedings in order to permit the respondent to apply for a new grant of voluntary departure. The Immigration and Naturalization Service took an appeal from that decision, although no hearing had yet been held to determine whether or not the respondent actually merited the relief sought. We deemed the appeal interlocutory in nature, and pursuant to our decision in *Matter of Sacco,* 15 I. & N. Dec. 109 (BIA 1974), we dismissed the Service's appeal for lack of jurisdiction. The Service has now submitted a motion seeking reconsideration of our May 10, 1976 dismissal of the appeal. The motion will be denied.

In order to avoid the piecemeal review of the many questions which may arise in a deportation proceeding, we have held that we lack

jurisdiction to entertain appeals from interlocutory orders of immigration judges. *Matter of Sacco,* supra. On occasion, we may assume jurisdiction by certification if an interlocutory order raises a significant issue involving the administration of the immigration laws. See *Matter of Seren,* 15 I. & N. Dec. 590 (BIA 1976). In addition, certain orders, although interlocutory in form, may be far-reaching in effect and have a sufficient degree in finality to warrant appeal jurisdiction. See *Matter of Fong,* 14 I. & N. Dec. 670 (BIA 1974).

The Service does not contend that the immigration judge's order reopening these proceedings raises any significant issue regarding the administration of the immigration laws. Instead, the Service merely asserts that on the facts of this case reopening is not warranted. The Service does, however, disagree with our characterization of the immigration judge's order as interlocutory," and therefore contends that we should address the merits of the appeal.

The Service contends that only those orders which *precede* the entry of a final order of deportation are "interlocutory" within the contemplation of *Matter of Sacco,* supra. According to the Service, the immigration judge's present order is not an interlocutory order because there has once been a final order of deportation entered in this case. We reject this construction of what constitutes an interlocutory appeal.

It is true that a final order of deportation was rendered by the immigratiom judge. The factual issue underlying this case, however, involves an entirely new question, namely, whether or not the respondent now deserves a new grant voluntary departure. See generally *Matter of Yeung,* 13 I. & N. Dec. 528 (BIA 1970); *Matter of Onyedibia,* 15 I. & N. Dec. 37 (BIA 1974); *Matter of Ozcan,* 15 I. & N. Dec. 301 (BIA 1975). The immigration judge's order reopening these proceedings does not dispose of the merits do the respondent's request for such relief. The immigration judge's order merely resolves the preliminary question of whether or not to hold a hearing at which evidence going to the merits may be presented. This is not a final disposition of the respondent's request for voluntary departure anew. For example, it is possible that the Service may persuade the immigration judge that the respondent does not merit such relief at the reopened hearing. ·

The Service also relies on *Matter of Rangel-Cantu,* 12 I. & N. Dec. 73 (BIA 1967), in arguing that it may take an appeal from an immigration judge's grant of a motion to reopen an alien's immigration case. *Matter of Rangel-Cantu,* supra, involved the question of an immigration judge's jurisdiction to reopen an exclusion proceeding after the execution of the order of exclusion and deportation. The presence of that issue would have justified our taking jurisdiction by certification in accordance with 8 CFR 3.1(c). However, we did not review the case pursuant to that authority, and instead we stated that ". . . the Service has the

713

right to appeal [an immigration judge's] order on a motion to reopen an exclusion case." *Matter of Rangel-Cantu,* 12 I. & N. Dec. at 74.

The language used in *Matter of Rangel-Cantu,* supra, does support the Service's position. However, as we have indicated, subsequent Board decisions have taken a much narrower view of our jurisdiction to entertain appeals from interlocutory order of immigration judges. We therefore overrule *Matter of Rangel-Cantu,* supra, to the extent that it is inconsistent with our present position on our jurisdiction over interlocutory appeals.

We have no jurisdiction to entertain the Service's appeal in this case, and we can perceive no reason for taking the matter on certification. The immigration judge has ordered the proceedings reopened. He will presumably entertain evidence and enter a final order on the respondent's request for voluntary departure anew. After that, both sides will have the opportunity to take an appeal to us from the immigration judge's decision.

**ORDER:** The motion to reconsider is denied.

**Irving A. Appleman, Member, Concurring:**

The Service motion for reconsideration argues with some persuasiveness, that a deportation order had already vested in this case, and that accordingly, we were not confronted with an interlocutory order, but, in effect a revival of completed proceedings.

The definition of interlocutory action is necessarily subject to varying interpretations. Normally, the issue is presented to us in the framework of a ruling prior to, or as part of, the primary deportation proceedings. *Matter of Sacco,* 15 I. & N. Dec. 109 (BIA 1974). Here, when the proceedings are reopened by an immigration judge, the deportation order is without force and the outcome undecided until the conclusion of the reopened hearing. As the majority points out, fragmented appeals are undesirable and contrary to the intent of the Immigration and Nationality Act (Section 106, Section 5, Act of September 26, 1961, 75 Stat. 651). The immigration judge entered the last order in the case; the motion was properly addressed to him; and he had the authority to entertain it. *Matter of Yeung* 13 I. & N. Dec. 528 (BIA 1970). It rests in his sound discretion to accept or reject it. We have had no abuse pointed out to us in this case, nor has the Service pointed to any general area of difficulty that will be occasioned by our holding.

While it is unnecessary to our holding to reach the merits, it should perhaps be noted that the Service has chosen a singularly poor vehicle for raising the issue. Subsequent to the original grant of voluntary departure by the immigration judge the alien was granted administrative extensions of the voluntary departure privilege, allegedly to allow him to proceed abroad to Toronto, Canada to receive his immigration

visa. The warrant of deportation did not issue until May 13, 1975. Thereafter deportation was stayed by reason of Senate consideration of a private bill. By October 1975 consular processing was finally completed and a visa number was made available for issuance of a visa the following month. The motion to reopen was filed on November 18, 1975, and the immigration judge directed reopening of the proceedings.

In his decision granting the motion, the immigration judge commented as follows:

> Copies of letters sent by counsel to the Service, and an affidavit by the respondent, show that the Service had misplaced respondent's file and that the United States Consul in Toronto had two or three separate files on the respondent; only after considerable delay were these files consolidated, but until such consolidation had occurred, the visa application could not be processed . . . it appears that the failure to depart may have been caused by circumstances beyond respondent's control . . .

Following the order of the immigration judge directing reopening of the proceedings, the district director moved for reconsideration and requested an opportunity to file a brief. The immigration judge reaffirmed on February 24, 1976. An appeal was taken by the Service which arrived here April 16, 1976. On May 10, 1976, we dismissed the Service appeal; whereupon the Service requested, and was granted, a stay of execution, and on June 11, 1976, filed a motion for reconsideration of our order. It is now over seven months since the original order of reopening.

In all this time not only has no significant issue been raised concerning the administration of the immigration laws, as the majority points out, but the unusually vigorous efforts of the Service in this case, have been devoted to impeding exploration of a situation which may possibly have been brought about, at least in some part, by government derelictions. One would normally expect the Service to desire a close scrutiny of this possibility, and to welcome appropriate corrective action, if warranted. I concur in the vote of the majority and add the further thought that the zeal shown in prosecuting this particular appeal might have been better used in bringing the matter to a speedy conclusion on the merits.