**Lily BOSSERT, Petitioner**

v.

**ATTORNEY GENERAL OF the UNITED STATES, Respondent.**

No. 08–2078.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) Aug. 5, 2009.

Opinion filed: Aug. 6, 2009.

Robert Frank, Esq., Frank & York, Newark, NJ, for Petitioner.

Richard M. Evans, Esq., Ernesto H. Molina, Esq., Anthony P. Nicastro, Esq., Joan E. Smiley, Esq., United States Department of Justice, Office of Immigration Litigation, Washington, DC, for Respondent.

Before: AMBRO, FISHER and JORDAN, Circuit Judges.

OPINION

PER CURIAM.

Petitioner Lily Bossert, a native and citizen of Peru, entered the United States without being inspected, admitted or paroled in 1991, and has resided in this coun-

try ever since. On October 14, 1997, her status was adjusted to that of a lawful permanent resident based on her marriage to Francis Bossert. Her permanent residence status on a conditional basis was terminated, however, on October 14, 1999. Bossert had filed a Form I–751 Petition to Remove the Conditions on Residence under Immigration & Nationality Act ("INA") § 216(c)(4)(B), 8 U.S.C. § 1186a, but it was denied by the District Director, who determined that the marriage had not been entered into in good faith. A.R. 47–49.

Bossert was served by regular mail with a Notice To Appear on March 20, 2000, which charged that she was removable under INA § 237(a)(1)(D)(i), 8 U.S.C. § 1227(a)(1)(D)(i), as an alien who has had her permanent residence status on a conditional basis terminated. The Notice To Appear was mailed to "664 Norwood Terr. Apt. # 1, Elizabeth, NJ 07202," and it did not specify a time and place for Bossert's removal hearing. Notice of the hearing date was mailed separately and at a later date. Bossert failed to show for her hearing on May 25, 2000, and the Immigration Judge ("IJ") ordered her removed in absentia from the United States to Peru. A.R. 46.

On March 30, 2007, Bossert, through counsel, filed a motion to reopen the removal proceedings in Immigration Court, contending that she did not receive actual or constructive notice of her hearing. She also related that she had met someone new, a U.S. citizen, Francis Muniz, and was considering marriage, and she had filed a Freedom of Information Act ("FOIA") request to learn about her immigration status. She learned about the order of removal when she received her FOIA response. Bossert acknowledged that she received the Notice To Appear that was mailed to her, but noted that it did not specify the date and time of the removal hearing. In an affidavit attached to the motion to reopen, Bossert stated that she never received actual or constructive notice of the date and time of the removal hearing. In this affidavit, Bossert also revealed that she lived at the "Norwood Terrace" address until she moved to her current address in July 2005. A.R. 14.

The Department of Homeland Security opposed the motion to reopen. The government asserted that the hearing notice, setting the date of the hearing for May 25, 2000, was mailed on March 29, 2000 to the "Norwood Terrace" address, and there was no indication in the record of proceedings that it had been returned to the Immigration Court as undeliverable.

On April 30, 2007, the IJ denied the motion to reopen on the ground that the evidence was insufficient to rebut the presumption of regular mail delivery. He reasoned that the hearing notice was sent to the same address as the Notice To Appear, Bossert admitted that she received the Notice To Appear, and her assertion that she did not actually receive the hearing notice was not persuasive considering her history of marriage fraud.

Bossert appealed to the Board of Immigration Appeals, raising a due process argument that she did not actually or constructively receive notice of her removal hearing. On March 12, 2008, the Board dismissed the appeal. The Board first addressed our decision in Santana Gonzalez v. Att'y Gen., 506 F.3d 274 (3d Cir.2007), which lowered the presumption of delivery that applies when immigration authorities send notice of a hearing by regular mail instead of certified mail. Having reviewed the holding of Santana Gonzalez, the Board then observed that the record in that case disclosed various attempts by the alien to inform DHS of her change of address, and that our decision emphasized that the alien, who was entitled to adjust

her status under the Cuban Adjustment Act, had little or no incentive to avoid her scheduled hearing, and had little to gain by failing to appear, *id.* at 280–81. Applying *Santana Gonzalez* to the facts of Bossert's case, the Board concluded that the record contained no corroborating circumstantial evidence supporting her claim of non-receipt. Nor did she allege that she had applied for or was eligible for any type of relief. Accordingly, she had good reason to avoid the hearing. Moreover, she waited almost seven years to file her motion to reopen, and did so only after she was considering entering into another marriage.

Bossert timely petitioned for review and sought a stay of removal, which we denied. The government has filed a motion to dismiss the petition for review on the ground that Bossert is a fugitive and not entitled to call upon the resources of this Court. Bossert has filed written opposition to this motion.

We will deny the petition for review. We have jurisdiction under INA § 242(a), 8 U.S.C. § 1252(a). We review the Board's denial of a motion to reopen for abuse of discretion. *Immigration & Naturalization Serv. v. Abudu,* 485 U.S. 94, 105, 108 S.Ct. 904, 99 L.Ed.2d 90 (1988). Under this deferential standard of review, we will not disturb the Board's decision unless it is arbitrary, irrational, or contrary to the law. *Santana Gonzalez,* 506 F.3d at 276 (citations omitted).

An alien must be provided written notice of her removal proceedings. 8 U.S.C. § 1229(a)(1). The notice must inform the alien of, among other things, "[t]he time and place at which the proceedings will be held." *Id.* at (a)(1)(G)(i). If there is any change or postponement in the time and place of an alien's removal proceedings, the government must provide the alien written notice specifying the new time or place of the proceedings, and the conse-

quences for failing to appear. *Id.* at (a)(2). Written notice must be given to the alien in person, or, "if personal service is not practicable, through service by mail. . . ." 8 U.S.C. § 1229(a)(1), (2)(A). Written notice by the Attorney General is sufficient if "provided at the most recent address provided" by the alien. 8 U.S.C. § 1229a(b)(5)(A); 8 C.F.R. § 1003.26(d).

An alien in removal proceedings shall be ordered removed *in absentia* if she fails to appear at a scheduled hearing after having been properly provided written notice of the time and place of that hearing, and the government establishes by clear, unequivocal, and convincing evidence that the notice was provided and that the alien is removable as charged. 8 U.S.C. § 1229a(b)(5)(A); 8 C.F.R. § 1003.26(c). An order of removal entered *in absentia* may be rescinded upon a motion to reopen filed within 180 days of the date of the order of removal where the alien demonstrates that her failure to appear was because of exceptional circumstances. It may also be rescinded upon a motion to reopen filed at any time where the alien demonstrates that she did not receive proper notice of her hearing, or that she was in federal or state custody and failed to appear through no fault of her own. 8 U.S.C. § 1229a(b)(5)(C)(i)–(ii); 8 C.F.R. § 1003.23(b)(4)(ii). Because Bossert's motion to reopen was filed outside the 180–day deadline, she was required to demonstrate non-receipt of the hearing notice.

In *Santana Gonzalez,* we held that, "[a]s the word 'receive' indicates, the key question in reopening a removal proceeding for lack of notice is not whether the Immigration Court properly mailed the notice to the alien, but whether the alien actually *received* the notice." 506 F.3d at 277. We lowered the presumption of delivery that applies when immigration authorities send notice of a hearing by regular, first-class

mail. The strong presumption of receipt applies when a notice from Immigration Court is sent by certified mail, but less evidence is required to overcome the presumption when a hearing notice is sent by regular mail. *See id.* at 278.

An alien may rebut the presumption of receipt, and potentially establish non-receipt, by producing certain contrary evidence. *See id.* at 279–80. Such evidence may include a sworn affidavit by the alien, or other person residing at the same address, that she never received the written notice. *See id.* An alien's affidavit claiming non-receipt of a notice sent by regular mail, along with corroborating circumstantial evidence, may be sufficient to raise a factual issue requiring an evidentiary hearing before the IJ. *See id.* at 280. In addition, whether the alien initiated proceedings with immigration authorities is evidence of non-receipt because such initiation indicates no motive to avoid the agency. *See id.* In *Santana Gonzalez,* the petitioner likely did not have a motive to avoid the scheduled hearing because she was entitled to adjustment of status under the Cuban Adjustment Act. *Id.* at 280–81.

Recently, in *Matter of M–R–A–,* 24 I. & N. Dec. 665, 674 (BIA 2008), the Board established a set of guidelines with respect to the type of evidence the agency should consider that might rebut the presumption of receipt, including, but not limited to: (1) the alien's affidavit; (2) affidavits from family members or other individuals who are knowledgeable about the facts relevant to whether notice was received; (3) the alien's actions upon learning of the *in absentia* order, and whether due diligence was exercised in seeking to redress the situation; (4) any prior affirmative application for relief, indicating that the alien had an incentive to appear; (5) any prior application or other prima facie evidence in the record or motion of statutory eligibility for relief, also indicating an incentive to appear; (6) the alien's previous attendance at Immigration Court hearings; and (7) any other circumstances or evidence indicating possible non-receipt of notice. *See id.* at 674. All relevant evidence submitted must be considered, and "[e]ach case must be evaluated based on its own particular circumstances and evidence." *Id.*

We conclude that the Board applied the correct standard in Bossert's case, *see Santana Gonzalez,* 506 F.3d 274, considered all of the relevant evidence, *see Matter of M–R–A–,* 24 I. & N. Dec. at 674, and properly determined that she failed to overcome the presumption of receipt. In support of her claim, Bossert offered her own affidavit, and she contends in her brief that the Board did not give adequate weight to it. We have carefully reviewed her affidavit, but because of the non-corroborating circumstantial evidence in her case, the affidavit does not rebut the presumption of receipt, or even give rise to a genuine dispute about the facts. In her affidavit, Bossert admitted to receiving through the mail both the March 20, 2000 Notice To Appear and the District Director's February 25, 2000 denial of her adjustment of status application; these items were addressed to her at "664 Norwood Terr. Apt # 1, Elizabeth, New Jersey 07202." A.R. 41. The hearing notice was mailed to the same address on March 29, 2000, A.R. 52, only nine days after the Notice To Appear was mailed.[1] According

---

1. The hearing notice plainly states that a hearing was scheduled for May 25, 2000 at 9:30 a.m. in Newark Immigration Court.

to her affidavit, Bossert lived at the Norwood Terrace address until July 2005. A.R. 14. Furthermore, at no time has Bossert claimed that she was having any trouble receiving her regular mail, and, as the Board noted, the hearing notice was not returned for non-delivery. We thus conclude that Bossert's assertion of non-receipt is not corroborated by the circumstantial evidence, but, instead, is undermined by it.

We further agree with the Board that Bossert had good reason to avoid her removal hearing. Unlike the alien in *Santana Gonzalez* who, "at all times sought to have a hearing to adjust her status," 506 F.3d at 281, Bossert did nothing for five years prior to submitting her FOIA request, and did not file a motion to reopen until almost seven years after her *in absentia* removal proceeding. Bossert was not diligent in obtaining counsel to pursue her motion to reopen. She contends that, because she had the opportunity to have the District Director's February 25, 2000 denial of her adjustment application reviewed in removal proceedings, *see* 8 C.F.R. § 216.5(f), this fact supports her claim that she had no intention of evading immigration authorities, *see* Petitioner's Brief, at 16–18. But nowhere in her affidavit does she acknowledge the basis for the District Director's decision, or claim that she would have sought review of it. The government observed, and we agree, that this factual circumstance led the Board to conclude that Bossert did not allege that she had applied for or was eligible for any type of immigration relief.

Last, Bossert contends that the IJ erred in concluding that she lacked credibility on the issue of non-receipt of the hearing notice because she could not meet her evidentiary burden to show a bona fide marriage. However, the Board did not similarly conclude that the marriage finding diminished the probative weight of Bossert's affidavit, and the Board's decision is the only one we review. *See Chukwu v. Att'y Gen. of U.S.*, 484 F.3d 185, 189 (3d Cir.2007) (because only Board's decision is final order of removal, IJ's decision not reviewed where Board does not adopt its findings and reasoning).

Accordingly, we conclude that the Board did not abuse its discretion in denying Bossert's motion to reopen. Unlike in *Santana Gonzalez*, the record here does not contain the necessary circumstantial evidence to support her claim of non-receipt of the hearing notice.

For the foregoing reasons, we will deny the petition for review. The government's motion to dismiss the petition for review pursuant to the Fugitive Disentitlement Doctrine is denied.[2]

---

**2.** Pursuant to the Fugitive Disentitlement Doctrine, a criminal defendant who has failed to surrender may be barred from calling upon the resources of a court. *Molinaro v. New Jersey*, 396 U.S. 365, 366, 90 S.Ct. 498, 24 L.Ed.2d 586 (1970) (per curiam). Although we have applied the doctrine to aliens, *Arana v. Immigration & Naturalization Serv.*, 673 F.2d 75, 77 (3d Cir.1982) (per curiam), we decline to apply it here.