NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-2814
_____

YAN YUN YE,
A/K/A
JIAN FEN ZHANG,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

_____

Petition for Review of an Order of the
Board of Immigration Appeals
BIA No. A75-809-257

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
November 17, 2009

Before: AMBRO, ALDISERT and ROTH, Circuit Judges
(Opinion Filed:  June 7, 2010)

_____

OPINION OF THE COURT
_____

ALDISERT, Circuit Judge.

Yan Yun Ye seeks review of an order of the Board of Immigration Appeals

("BIA" or "Board") denying her motion to reopen her immigration proceedings.[1] As set forth below, we will grant the petition, vacate the BIA's decision below and remand for further proceedings consistent with this opinion.

## I.

Yan Yun Ye, a native and citizen of the People's Republic of China, attempted to enter the United States on April 12, 1998, and was placed in removal proceedings. On June 3, 1998, she applied for asylum and appeared before an Immigration Judge ("IJ" or "judge"). On March 31, 1999, the IJ ordered Ye removed to China in absentia when she failed to appear at a scheduled hearing. She did not seek review.

Nearly eight years later, on March 15, 2007, Ye filed a motion to reopen her proceedings. Under the applicable regulations, a motion to reopen "must be filed no later than 90 days after the date on which the final administrative decision was rendered in the proceeding sought to be reopened." 8 C.F.R. § 1003.2(c)(2). An exception exists, however, for motions to reopen "to apply or reapply for asylum or withholding of deportation based on changed circumstances arising in the country of nationality . . . , if such evidence is material and was not available and could not have been discovered or presented at the previous hearing." Id. § 1003.2(c)(3)(ii); see also 8 U.S.C. § 1229a(c)(7)(C)(ii). Invoking this exception, Ye argued that her motion to reopen was not

---

[1]The BIA had authority to review the IJ's denial of Ye's motion to reopen pursuant to 8 C.F.R. § 1003.1(b)(3). This Court has jurisdiction to review the BIA's decision pursuant to 8 U.S.C. § 1252.

time-barred because conditions had changed in the Fujian Province of China, the place to which she would be deported. Ye submitted evidence that the Fujian Province had recently increased "the extent and severity of persecutive means employed to enforce the country's Population and Family Planning Laws." (App. 81.) She contended that, if removed, she was likely to be sterilized.

After considering Ye's evidence, the IJ denied the motion and ruled that Ye failed to show a material change in China's family planning policies. (App. 41-43.) Alternatively, the IJ ruled that Ye's motion to reopen was altogether barred by the fugitive disentitlement doctrine because Ye had "avoid[ed] the attention of immigration authorities since March 31, 1999" when she was ordered removed. (App. 43.) On review, the BIA dismissed Ye's appeal, agreeing with the IJ on both grounds.[2] This petition followed.

## II.

Because the BIA issued a decision on the merits, we review the order of the BIA rather than that of the IJ. Li v. Att'y Gen., 400 F.3d 157, 162 (3d Cir. 2005). We review the BIA's denial of a motion to reopen for abuse of discretion, and we will uphold its decision unless it was arbitrary, irrational or contrary to law. See Sevoian v. Ashcroft, 290

---

[2]Both parties briefed the issue whether Ye made out a prima facie case for asylum, but that issue is not before us. Neither the IJ nor the BIA ultimately reached this issue. (See App. 2-3 (BIA decision); 41-43 (IJ decision).) Consequently, we have nothing to review. Cf. Abdulai v. Ashcroft, 239 F.3d 542, 548-549 (3d Cir. 2001).

F.3d 166, 174 (3d Cir. 2002). We apply a similarly deferential standard to the BIA's

factual findings, which we review for substantial evidence. See id.

### III.

We first address Ye's argument that the BIA erred in holding that her motion to

reopen was altogether barred by the fugitive disentitlement doctrine.[3] Under the fugitive

disentitlement doctrine, an appellate court may dismiss the appeal of a convicted felon

who becomes a fugitive during the appellate process. See Smith v. United States, 94 U.S.

97, 97 (1876). In the immigration context, we have applied the doctrine to one "who is

subject to an order of deportation but who has hidden his whereabouts from immigration

authorities and this [appellate] Court." Arana v. INS, 673 F.2d 75, 76 (3d Cir. 1982). As

with criminal fugitives, a fugitive alien "disentitles himself from calling upon the

resources of this Court" by "conceal[ing] himself from this Court, the District Court and

the INS." Id. at 77 (quotation, citation and alteration omitted).

Ye directs a number of legal, constitutional and policy arguments to the

proposition that the doctrine does not and should not apply to her. After reviewing the

BIA's decision, however, we are not satisfied that the BIA's written opinion offers an

explanation sufficient for our review. In its one-sentence application of the fugitive

---

[3] The petitioner failed to include a summary of her argument in her brief as required by Rule 28(a)(8) of the Federal Rules of Appellate Procedure. The petitioner also failed to label volume one of the Appendix, as required under Local Appellate Rule 32.2(c), complicating our efforts to cite and access documents in the Appendix. We encourage counsel to comply with these rules, as they facilitate our efficient review.

disentitlement doctrine to Ye's case, the BIA explained that

> because [Ye] was ordered removed in absentia in 1999, has not challenged the order for lack of notice, and has evaded removal nearly 10 years, we find that the Immigration Judge appropriately applied the fugitive disentitlement doctrine to [Ye's] case and concluded that reopening is not warranted.

(App. 3.)

From this, we are unable to ascertain even the factual predicates of the BIA's fugitive disentitlement ruling, much less review them for "substantial evidence." Although the IJ's opinion, the record and the parties' briefs give us the impression that Ye's whereabouts are now known by immigration officials (e.g., App. 63), the BIA's opinion suggests otherwise (see App. 3). Significantly, the BIA's statement that Ye "evaded removal nearly 10 years" suggests that Ye remained at large from the date of her removal order (March 31, 1999) to the date of the BIA's opinion (June 3, 2008), and implies that Ye did not present herself to officials when she moved to reopen (March 15, 2007). Nothing in the BIA's statement of facts suggests otherwise. Yet, if the BIA believed that petitioner Ye was actually at large, it likely would have mentioned that fact, as neither this Court nor "[any] court has ever applied the doctrine to an alien whose whereabouts are known and who has not fled from custody." Sun v. Mukasey, 555 F.3d 802, 804 (9th Cir. 2009); see Arana, 673 F.2d at 77. We are thus uncertain of the BIA's factual assumptions, and we can conduct no meaningful factual review.

Our factual uncertainty also prevents us from reviewing the legal standards

underlying the BIA's fugitive disentitlement holding, as the facts bear heavily on the legal analysis. If Ye's whereabouts have been unknown at any time since she moved to reopen her proceedings in March of 2007, our decision in <u>Arana</u> may provide clear authority for application of the doctrine to Ye's case. <u>See</u> <u>Arana</u>, 673 F.2d at 77 (applying the fugitive disentitlement doctrine to an alien whose whereabouts were unknown during the review process). On the other hand, if Ye presented herself to authorities, the BIA's application of the doctrine to Ye's case takes a much more controversial position, as no Court of Appeals has applied the doctrine to a petitioner who is available to immigration officials during the review process. <u>Sun</u>, 555 F.3d at 804; Arana, 673 F.2d at 77. We simply cannot review the BIA's legal ruling without the advantage of these basic facts.

As we will explain in Part IV, the BIA's alternative ground for dismissing Ye's appeal is also insufficient. Consequently, we must grant the petition, vacate and remand to the BIA. On remand, we direct the BIA to explain more precisely the facts and circumstances justifying its fugitive disentitlement analysis. If the BIA determines that "further factfinding is needed," it may of course "remand the proceeding to the immigration judge or, as appropriate, to the Service." 8 C.F.R. § 1003.1(d)(3)(iv). In addition, because the BIA is obligated to "actually consider the evidence and argument that a party presents," Abdulai, 239 F.3d at 549, the BIA should consider Ye's sworn statement that she never received notice of her deportation hearing. (App. 102 ¶ 1.) Although not necessarily determinative, we believe that evidence has some bearing on

6

whether Ye was a fugitive within the meaning of the doctrine. Finally, if the facts are not as the BIA had assumed, the BIA should reconsider its application of the fugitive disentitlement doctrine. In any case, the BIA should set forth an explanation sufficient for our review.

IV.

Because the BIA denied Ye's motion to reopen on an alternative ground – her failure to establish changed conditions in the Fujian Province of China – we must address Ye's objections to that aspect of the BIA's decision. See Larngar v. Holder, 562 F.3d 71, 78 (1st Cir. 2009). To the extent the BIA intends to place continued reliance on this decisional ground, the following discussion governs the analysis.

Ye contends that her evidence was sufficient to establish changed conditions in China, and that we should grant her motion to reopen. We are more persuaded, however, by Ye's alternative due process argument. In this regard, Ye contends that the BIA impermissibly ignored her evidence and relied entirely on its prior decisions concerning conditions in the Fujian Province. We agree. Ye's case is on all fours with Zheng v. Attorney General, 549 F.3d 260 (3d Cir. 2008), which was decided approximately one month after Ye submitted her brief (but before the Government submitted its own brief). Although neither party has brought Zheng to our attention, that case compels the conclusion that the BIA's country-conditions analysis was insufficient as a matter of due

7

process.[4]

In Zheng, we applied due process principles to vacate the BIA's denials of two petitioners' motions to reopen based on changed country conditions, where the BIA's opinion "failed to discuss most of the evidentiary record." Id. at 268-269. Although we did not impose a rule requiring "the BIA [to] expressly parse or refute on the record each individual argument or piece of evidence," we did affirm that

> [t]he BIA should demonstrate that it has considered [the petitioner's evidence of changed country conditions], even if only to dismiss it. In so doing, the BIA should provide us with more than cursory, summary or conclusory statements, so that we are able to discern its reasons for declining to afford relief to a petitioner.

Id. at 268 (quoting Wang v. BIA, 437 F.3d 270, 275 (2d Cir. 2006)). Moreover, we emphasized that the BIA's duty to consider an applicant's relevant evidence may be even "'greater . . . in the context of motions to reopen based on changed country conditions.'" Id. (quoting Guo v. Gonzales, 463 F.3d 109, 115 (2d Cir. 2006)).

Applying those precepts, we determined with little difficulty that the BIA had conducted an insufficient review of both petitioners' motions to reopen. In petitioner Zheng's case, "the BIA did little more than quote passages from its earlier decision in J-W-S-[, 24 I&N Dec. 185 (BIA 2007),] without identifying – let alone discussing – the various statements contained in the record." Zheng, 549 F.3d at 268-269. In petitioner

---

[4]Given that Ye's counsel, Gary J. Yerman, was also the counsel of record in the Zheng case, we are perplexed by Ye's failure to notify us of that case in a letter submitted under Rule 28(j) of the Federal Rules of Appellate Procedure.

8

Chen's case, the BIA's review was even more cursory:

> [T]he BIA failed to refer to most of the documents that Chen submitted in support of his motion, whether explicitly or by citation to an earlier decision . . . . In fact, the BIA's discussion . . . amounts to a series of conclusory statements, and fails to offer even a cursory review of the record. For example, the BIA stated that "[Chen] has not provided sufficient evidence that any sanctions [he] may experience if he returns to China would rise to the level of persecution."

Id. at 270-271 (footnote omitted). Although we acknowledged that the BIA's summary conclusions may have been correct, we held that the BIA's review was insufficient as a matter of due process. See id. at 271-272. Given the BIA's failure to discuss either petitioner's evidentiary record, we vacated and remanded the BIA's denials of both petitioners' motions to reopen. Id. at 271.

Zheng compels the same result here. In affirming the IJ's determination that Ye's motion to reopen was untimely, the BIA stated:

> After reviewing the background material considered by the Immigration Judge, we are not convinced that the evidence shows a material change . . . . Given the recent extensive analysis undertaken by the Board of the situation in China, and in particular [Ye's] Fujian Province, the evidence submitted is insufficient to meet the heavy burden of proof required to grant an untimely motion to reopen [her] removal proceedings. See Matter of S-Y-G-, 24 I&N Dec. 247 (BIA 2007); Matter of J-H-S-, 24 I&N Dec. 196 (BIA 2007); Matter of J-W-S-, 24 I&N Dec. 185 (BIA 2007).

(App. 2-3.) The balance of the BIA's discussion explained its holdings in S-Y-G-, J-H-S-, and J-W-S-, and referred only generally to the insufficiency of "the additional documents provided by the respondent." (App. 3.) As in Zheng, the BIA's review "amount[ed] to a series of conclusory statements, and fail[ed] to offer even a cursory review of the record."

9

Zheng, 549 F.3d at 271.

Contrary to the Government's contention, the BIA was not entitled to substitute its own precedents for the individualized evidentiary review to which petitioner Ye was entitled. Rejecting that same contention in Zheng, we ruled that

> where the evidentiary record contains documents that were not at issue in an earlier decision, mere reference to that earlier decision is insufficient to warrant adopting its conclusions. Rather, the BIA must assess any evidence that bears on the questions of fact which it must decide.

Id. at 271 n.7 (citation omitted). Although the Board was entitled to consider its "recent extensive analysis . . . of the situation in China" (App. 2), it could not ignore the portions of Ye's evidence that were not addressed in those cases.[5] Nor could it rely on its prior decisions without satisfying itself that Ye's evidence was in fact the same as, or substantially similar to, the evidence rejected in those cases. As in Zheng, the BIA's decision provides no information regarding its rationale for deeming Ye's evidence irrelevant or unpersuasive.

Consequently, Zheng forecloses the BIA from resting its dismissal on its determination that Ye did not meet her burden of establishing changed country conditions in China, as that determination was inconsistent with due process. If the BIA intends to

_____

[5]Our review satisfies us that Ye submitted many documents that were not at issue in the past decisions upon which the BIA's opinion relied. This evidence includes, but is not limited to, Ye's affidavit, the Policy Statement from the Administrative Office of the National Population and Family Planning Committee, the Changle City Q & A, Wu's congressional testimony, and two news articles.

place continued reliance on this alternative decisional ground, on remand it must reconsider Ye's arguments and "make a more complete analysis of the evidence [she has] submitted." Zheng, 549 F.3d at 272.

## V.

We have considered all contentions raised by the parties and conclude that no further discussion is necessary. For the foregoing reasons, we will grant Ye's petition for review, vacate the BIA's decision below and remand for further proceedings consistent with this opinion.

_____